DE COMEAN (FIELD v.). See Case No. 4,-765.

DE COOK (ADAMS v.). See Case No. 51.

---

## Case No. 3,729.

### DEDEKAM v. VOSE et al.

[3 Blatchf. 44.][1]

Circuit Court, S. D. New York. Sept. 24, 1853.[2]

SHIPPING—EXCEPTIONS IN BILL OF LADING—NEGLIGENT STOWAGE—TENDER.

1. The words "not accountable for rust," in a bill of lading of iron, do not exempt the owner of the vessel from responsibility for damage by rust to the iron, caused by its having been improperly stowed by such owner.

[Cited in The Delhi, Case No. 3,770; Vaughan v. Six Hundred and Thirty Casks of Sherry Wine, Id. 16,900; The Saratoga, 20 Fed. 871.]

2. When sued for the freight on such iron, its owner is entitled to an abatement of the freight, to the extent of the damage to the iron.

3. Where, before suit was brought for the freight, the owner of the iron offered to pay the balance of the freight, deducting such damage, to be ascertained by arbitration or by a sale of the damaged iron at auction, but this was refused and the whole amount of the freight was demanded, and, afterwards, the damage was ascertained by such a sale, on notice to the owner of the vessel, but no offer was made to pay the balance so ascertained, till it was made in the answer in the suit: *Held*, that, in a court of admiralty, the circumstances were equivalent to a tender after the sale and before suit brought.

[Appeal from the district court of the United States for the southern district of New York.]

This was a libel in personam, filed in the district court, by [Andres Dedekam] the owner of the brig Brodrene, to recover freight for the conveyance of certain bundles of nail-rod iron, in that vessel, from Newcastle-upon-Tyne to New York. The bill of lading of the iron was dated May 15th, 1850, and contained, at the foot of it, the exception, "not accountable for rust." On the discharge of the cargo, a portion of the iron was found to be injured by rust. The consignees claimed a deduction from the freight of the amount of the damage to the iron, which was

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] [Affirming Case No. 3,732.]

refused. This libel was then filed, claiming the whole amount of the freight. The answer set up that the damage to the iron was occasioned by bad stowage; that it was sold at auction, after notice to the agents of the vessel; that the loss occasioned by the rust amounted to $164 14; and that a tender of the amount of the freight over and above that sum was made before the libel was filed. The respondents also brought into court, with their answer, the amount of the tender. Evidence was taken in the district court in respect to the stowage of the iron, by which it appeared that the portion damaged by rust was stowed at the bottom of the ship, under a large quantity of coal, and that the rust was occasioned by such stowage. The district court held the tender sufficient to cover the balance of the freight over and above the damage, and dismissed the libel. [Case No. 3,732.] From that decree the libellant appealed to this court. The other facts are sufficiently stated in the opinion of the court.

George F. Betts and Charles Donohue, for libellant.
Erastus C. Benedict, for respondents.

NELSON, Circuit Justice. It is urged, on this appeal, that the exception in the bill of lading exempts the owner from responsibility for the damage, although the rust be attributed to the defective stowage. But I cannot agree to this doctrine. Even in the case of the usual exception of "the dangers of the sea," if it can be shown that the goods might have been saved by the due and proper care and diligence of the master and crew, notwithstanding the peril, the vessel is answerable for the loss. These exceptions in bills of lading do not cover negligence or want of care on the part of the carrier. Whether carriers or other employees can stipulate for exemption from liability for negligence or unskillfulness in the fulfillment of their undertakings, within sound principles of public policy, is, perhaps, not exactly judicially settled; but, it may, at least, be safely said, that if any such exemption can be set up, it must be in pursuance of an express and positive agreement to that effect, or, what may be the same thing, necessary and unavoidable implication. Nothing of the kind appears in the bill of lading in this case. It is conceded that the rust was occasioned by negligence or unskillfulness in the stowage. The bundles of iron stowed upon the top of the coal were discharged in good order, while those under it, at the bottom of the vessel, were more or less damaged by the rust. The carrier, therefore, was clearly liable for this damage.

There is a little difficulty upon the question of the tender, on account of the confusion and want of precision in the evidence relied on to establish it. There is no doubt that the respondents are entitled to an abatement of the freight claimed, to the extent of the damage to the iron. But, in order to avoid being charged with costs, or, at least, to entitle themselves to costs, they must show that they made a tender, or what, in the admiralty, will be regarded as an equivalent, before the suit was brought. It is in proof, that an offer was repeatedly made, before suit, to pay the balance of the freight, deducting this loss, to be ascertained by arbitration, or by a sale of the damaged iron at auction, but that this was refused, and that the whole amount of the freight was demanded; also, that, after this, a sale of the damaged iron at auction took place, with notice to the agents of the vessel, and that the amount of the loss was in this way ascertained. But there seems to have been no offer actually made to pay the balance, after thus ascertaining it, till the offer that was made on the filing of the answer. It is quite clear, however, that a tender again would have been a mere matter of form, as the agents had refused repeatedly to accept the offer shortly before the auction sale took place; and, for aught that appears, they neglected to attend the sale, or to take any notice of it, thereby leaving the implication that they still refused to adjust the dispute in that way. If this conclusion can be properly maintained, the tender on the coming in of the answer was all that could be essential to support this branch of the defence. If a tender had been in fact made after the balance was ascertained by the sale, the case would be free from difficulty; and, if the conduct of the agents fairly authorizes the conclusion, that the repetition of the tender would have been but an idle ceremony, because of the offers and refusals that previously took place, then the case must be regarded as standing upon the same footing as if a tender had been made after the sale.

I admit that this tender could not be maintained, according to the strict principles of the common law. Indeed, as the sum in controversy sounds in damages, it could not have been the subject of a set-off at all in an action at law. It might have been given in evidence in abatement of the amount of freight claimed. The doctrine, however, of courts of admiralty on this subject, is less stringent. A tender may be made in salvage cases, where the amount in controversy is quite as uncertain and indefinite as it is here; and it will be upheld even where there has been less formality in making it than is required at law. The court looks to the substance and good faith of the transaction, rather than to technical forms of proceeding. The True Blue, 2 W. Rob. Adm. 176, 180; The Lady Flora Hastings, 3 W. Rob. Adm. 118; Crosby v. Grinnell [Case No. 3,422]; The Frederick, 1 Hagg. Adm. 211, 218; 2 Chit. Gen. Pr. 523.

Upon the whole, therefore, I think that the decree below is right and should be affirmed.

[NOTE. This case was afterwards twice heard in this court on questions relating to the taxation of costs. See Cases Nos. 3,130 and 3,132.]