DeWine, J., dissenting.
{¶ 40} In 1793, France and Great Britain were at war. George Washington's cabinet was divided on how to maintain the United States' neutrality in the war *216 while still honoring its treaties with the two countries.[2] To resolve the division, Washington sought guidance from the United States Supreme Court on the proper interpretation of the treaties. Chief Justice John Jay, on behalf of the court, delicately explained to the President that the lines of separation drawn by the Constitution between the departments of government did not permit the court to "extra-judicially decid[e] the questions alluded to." 3 The Correspondence and Public Papers of John Jay 488-489 (Johnston Ed.1891). Jay's response has long been understood as announcing the principle that the judicial power granted under the United States Constitution does not allow a court to offer advisory opinions. See Flast v. Cohen, 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), fn. 14 ; Campbell-Ewald Co. v. Gomez , --- U.S. ----, 136 S.Ct. 663, 678, 193 L.Ed.2d 571 (2016).[3]
{¶ 41} This court's authority is derived from the Ohio Constitution. Our Constitution follows the model of the federal Constitution, dividing power between three distinct branches of government. Like the federal Constitution, the Ohio Constitution limits the authority of this court and inferior courts to the exercise of the "judicial power." U.S. Constitution, Article III, Section 1 ; Ohio Constitution, Article IV, Section 1. While the language of our Constitution does not mirror the "cases" and *819 "controversies" language of the United States Constitution, see U.S. Constitution, Article III, Section 2, it is generally understood that the grant of the judicial power requires that we decide only "actual controversies where the judgment can be carried into effect, and not * * * give opinions upon moot questions or abstract propositions, or * * * declare principles or rules of law which cannot affect the matter at issue in the case before it," Travis v. Pub. Util. Comm. , 123 Ohio St. 355, 359, 175 N.E. 586 (1931).
{¶ 42} The provision of the Ohio Constitution that empowers us to decide certified-conflict cases reflects that our judicial power extends only to actual cases in which a real controversy exists. If the judges of a court of appeals find that "a judgment on which they have agreed is in conflict with a judgment" pronounced by another court of appeals court, the judges certify "the record of the case to the supreme court for review and final determination ." (Emphasis added.) Ohio Constitution, Article IV, Section 3 (B)(4). We must then "review and affirm, modify, or reverse the judgment ." (Emphasis added.) Ohio Constitution, Article IV, Section 2 (B)(2)(f). But when a matter is moot, there is no longer a case for us to review. And there is no longer in any real sense a judgment for us to affirm, *217 modify, or reverse. A judgment is a "court's final determination of the rights and obligations of the parties in a case." Black's Law Dictionary 970 (10th Ed.2014). When a case becomes moot, we cannot make a final determination of the rights and obligations of the parties, because there is no longer a dispute. Thus, the court today can make no determination about Adam Cupp's right to receive jail-time credit or the state's obligation to provide it-as the lead opinion admits in its final words, "[b]ecause the defendant is deceased, remand is not necessary." Lead opinion at ¶ 24.
{¶ 43} The lead opinion concludes that we may choose to ignore the constitutional limits on our authority and issue a purely advisory opinion because the state remains interested in the answer. But any time a court is asked to decide a moot case, some party remains interested; otherwise, no one would be pushing for a decision. And that it is the state-as opposed to a private party-that remains interested is of little moment. The questions put to Chief Justice John Jay and his fellow justices were of great interest to the government, and still they recognized they did not have power to answer them. Indeed, if the lead opinion's bent today carries over to other cases, the mootness doctrine will be virtually eviscerated for those numerous jurisdictional appeals accepted by this court on the basis of their "public or great general interest," Ohio Constitution, Article IV, Section 2 (B)(2)(e); S.Ct.Prac.R. 5.02(A)(3).
{¶ 44} The lead opinion untethers this court from the requirement that it decide actual cases involving live controversies and enables this court to issue purely advisory opinions as long as it concludes that the question involved is of interest to the public. Because I find such an expansive role to extend beyond the judicial power entrusted to us under our Constitution, I respectfully dissent.

For history on the "Neutrality Crisis," see Golove & Hulsebosch, A Civilized Nation: The Early American Constitution, the Law of Nations, and the Pursuit of International Recognition , 85 N.Y.U.L. Rev. 932, 1019-1061 (2010).

Notably, the court later answered the questions that had been posed when they were presented in cases. See Golove & Holsebosch, 85 N.Y.U.L.Rev. at 1024-1025.