FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 26, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANNI LYNN WINTER; SUSAN
BRAWNER; SATIOUS MARTINEZ;
ANTHONY BARELA,

    Plaintiffs - Appellants,

v.

NEW MEXICO DEPARTMENT OF
WORKFORCE SOLUTIONS; SARITA
NAIR, in her official capacity as Secretary
of the New Mexico Department of
Workforce Solutions,

    Defendants - Appellees.

No. 23-2014
(D.C. No. 1:21-CV-00475-JFR-SCY)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **EBEL**, and **EID**, Circuit Judges.
_____

Appellants Danni Lynn Winter, Susan Brawner, Satious Martinez, and Anthony

Barela, filed suit in the District of New Mexico against Appellees, the New Mexico

Department of Workforce Solutions ("Department of Workforce Solutions") and

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

Secretary Sarita Nair[1] (collectively, "NMDWS"), alleging that Appellants have been denied access to benefits under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, 15 U.S.C. § 9001 *et seq*. Appellants brought three causes of action under 42 U.S.C. § 1983: (1) violation of the CARES Act, (2) violation of the Fourteenth Amendment's Due Process Clause, and (3) violation of the Equal Protection Clause. The district court dismissed Appellants' CARES Act claim and granted summary judgment in favor of NMDWS on Appellants' due process and equal protection claims. Appellants appealed, challenging the court's disposition of their due process claim.

Because we conclude that this case is moot, we dismiss this appeal.

## I.     BACKGROUND

### A.     *Factual History*

**1.     Pandemic Unemployment Assistance Program**

Congress passed the CARES Act, 15 U.S.C. § 9001 *et seq.*, in response to the COVID-19 pandemic. It took effect on March 27, 2020, and appropriated relief money "for making payments to States, Tribal governments, and units of local government." 42 U.S.C. § 801(a)(1). New Mexico received funding from the CARES Act for eligible disbursements.

---

[1] When the district court case was filed, Ricky Serna was the Acting Secretary of the Department of Workforce Solutions. Subsequently, Sarita Nair was appointed Secretary and was substituted in her official capacity for Mr. Serna as a party to this case pursuant to Federal Rule of Appellate Procedure 43(c)(2). For consistency, this order refers to Secretary Nair throughout.

The CARES Act provided for a benefit known as Pandemic Unemployment Assistance ("PUA"), available to "covered individuals." 15 U.S.C. § 9021. Specifically, the CARES Act instructed that the U.S. Secretary of Labor "shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation . . . or waiting period credit." *Id.* § 9021(b). The CARES Act also provided for applicants' appeal rights. *Id.* § 9021(c)(5).

Under the CARES Act, a "covered individual" means an individual who:

> (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title;
>
> (ii) provides self-certification that the individual—
>
>> (I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work [for one of a list of enumerated COVID-19-related reasons]; or
>>
>> (II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, and meets the requirements of subclause (I); and
>
> (iii) provides documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment not later than 21 days after the later of the date on

3

> which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed by the State Agency to submit such documentation in accordance with section 625.6(e) of title 20, Code of Federal Regulations, or any successor thereto, except that such deadline may be extended if the individual has shown good cause under applicable State law for failing to submit such documentation[.]

*Id.* § 9021(a)(3)(A). The CARES Act also excludes from "covered individuals" those who can telework with pay and individuals who are receiving paid sick leave or other paid leave benefits. *Id.* § 9021(a)(3)(B).

The PUA program was a federal-state cooperative program administered pursuant to agreements between the U.S. Department of Labor and individual states. 15 U.S.C. § 9021(f). In New Mexico, NMDWS administered the program pursuant to the Agreement Implementing the Relief for Workers Affected by Coronavirus Act between the State of New Mexico and the U.S. Secretary of Labor (the "Agreement"). The program expired on September 6, 2021. *See* Lenita Jacobs-Simmons, Acting Assistant Secretary, U.S. Department of Labor, *Pandemic Unemployment Assistance (PUA) Program: Updated Operating Instructions and Reporting Changes*, UIPL No. 16-20 Change 7, at 2 (Oct. 21, 2022) ("The PUA program expired on September 6, 2021, though some states chose to end participation earlier."). New Mexico issued PUA benefits under the Agreement for the program's duration.

### 2.    Appellants' Applications for PUA Benefits

Each Appellant alleges he or she was terminated from or left a job for reasons related to the COVID-19 pandemic. The Appellants unsuccessfully applied for

4

unemployment insurance benefits through the State of New Mexico.[2] Each Appellant also unsuccessfully sought PUA benefits through NMDWS. Appellants allege that NMDWS has denied access to PUA benefits by either denying Appellants the opportunity to apply for PUA benefits, or by affirmatively refusing Appellants access to the PUA program by refusing to process written PUA applications prepared and submitted to NMDWS's counsel via Appellants' counsel. Appellants assert they each qualify as a "covered individual" under the CARES Act and they are therefore entitled to PUA benefits.

NMDWS asserts that, prior to the district court entering its final judgment, Appellants were given the opportunity to apply for CARES Act benefits. Specifically, NMDWS claims it provided each Appellant with an internet link to file for CARES Act benefits through his or her individual unemployment insurance accounts, each Appellant applied, and those who were eligible received PUA benefits for all weeks in which they qualified.[3] On appeal, Appellants acknowledge that all four Appellants have been given the opportunity to apply for PUA benefits. *See* Oral Argument at 3:22–30, 29:00–20, *Winter v. New Mexico Department of Workforce Solutions*, No. 23-2014 (10th Cir. Nov.

---

[2] The complaint does not specifically allege Ms. Martinez applied for and was denied unemployment benefits. However, the complaint does allege she is a "covered individual," which requires that she not be eligible for unemployment benefits.

[3] The parties agree that three of the Appellants were awarded PUA benefits, one Appellant, Ms. Winter, was denied the benefits, and Ms. Winter is currently litigating her eligibility for PUA benefits in a separate state court case. Because the parties agree that Ms. Winter will be awarded PUA benefits if she is adjudicated to be a "covered individual," the pending resolution of that issue does not affect our mootness analysis.

14, 2023), https://www.ca10.uscourts.gov/sites/ca10/files/oralarguments/23-2014.mp3 ("Oral Argument") (Appellants explaining that "[Ms. Winter] is the only one who has not received any PUA [benefits]" and "[NMDWS] didn't let [Ms. Winter] apply [for PUA benefits] until two years after").

### B.    *Procedural History*

In May 2021, Appellants, Ms. Winter, Ms. Brawner, Ms. Martinez, and Mr. Barela,[4] filed suit in the District of New Mexico against the Department of Workforce Solutions and Secretary Nair, alleging that they have been denied access to federal disaster benefits under the CARES Act. Appellants asserted three causes of action under 42 U.S.C. § 1983: (1) violation of the CARES Act; (2) violation of the Fourteenth Amendment's Due Process Clause; and (3) violation of the Equal Protection Clause. Appellants sought declarations that NMDWS's actions illegally excluded Appellants from the CARES Act programs, were violative of the CARES Act, and violated Appellants' rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses. They also requested injunctions preventing NMDWS from continuing to deny Appellants access to the relevant programs and requiring NMDWS to allow Appellants to apply for benefits retroactively. Finally, Appellants requested attorney's fees and costs, as well as further relief as proper.

---

[4] Tyber Ward also filed suit, but his claims were subsequently dismissed for failure to prosecute. He is not party to this appeal.

NMDWS moved to dismiss, or in the alternative for summary judgment on, Appellants' first claim and moved for summary judgment on Appellants' second and third claims. The district court granted NMDWS's motions, dismissing Appellants' first claim that NMDWS violated the CARES Act for failure to state a claim upon which relief could be granted, and granting summary judgment for NMDWS on Appellants' due process and equal protection claims. Regarding the due process claim, the district court concluded Appellants did not have a protected property interest in PUA benefits. Appellants moved to alter the judgment, challenging the district court's final judgment as to the due process claim. The district court denied Appellants' motion, again concluding that Appellants did not have a constitutionally protected property interest. Appellants filed a timely appeal. The alleged due process violation is the only claim at issue on appeal.

## II.    DISCUSSION

NMDWS argues on appeal that this case is moot. The district court on two occasions concluded the case was not moot. "If a case is moot, we lack subject-matter jurisdiction." *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1101 (10th Cir. 2023). Mootness is a question of law we review de novo. *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1159 (10th Cir. 2023).

### A.    Legal Standard

Article III of the Constitution permits federal courts to decide only "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. This requires "a genuine, live dispute

7

between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).

Article III's case-or-controversy requirement comprises three elements: injury in fact, causation, and redressability. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998). A case "becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (internal quotation marks omitted); *see Campbell–Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) ("If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013))). Thus, the mootness doctrine helps to ensure federal courts stay within Article III's bounds throughout the litigation. *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016).

A claim is not moot, however, where a favorable judicial decision would even partially redress an alleged injury. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (internal quotation marks omitted)); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (explaining that although "a single dollar often cannot provide full redress, . . . the ability 'to effectuate a partial remedy' satisfies the redressability requirement" (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992))).

In addition, we find an exception to mootness where a defendant voluntarily ceases an alleged illegal practice "which the defendant is free to resume at any time." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (quotation marks omitted). "[T]his exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Id.* (quotation marks omitted). But "[v]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Id.* (quotation marks omitted). Thus, this doctrine does not overcome mootness if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (quoting *Cnty. of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)).

The party asserting mootness bears the "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Rio Grande Silvery Minnow*, 601 F.3d at 1116 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). We evaluate mootness as to each form of relief requested. *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019).

### B.     Analysis

We consider the question of mootness at the time of this appeal and conclude that the case is moot because the injuries alleged cannot be redressed.

NMDWS asserts this case is moot, representing that, "[s]ubsequent to the filing of this action, [NMDWS] provided all of the Appellants with the means to apply for PUA benefits," all four of the Appellants submitted applications for PUA benefits, three were awarded benefits, and one was denied for eligibility reasons. Appellees' Br. at 11. NMDWS further asserts that the denied individual, Ms. Winter, was afforded administrative and judicial rights of appeal. Appellants do not directly contradict NMDWS's assertion in their briefing, and at oral argument conceded that NMDWS has permitted all four Appellants to apply for PUA benefits.[5] *See* Oral Argument at 3:22–30, 29:00–20. Appellants instead counter that the burden of establishing mootness rests with NMDWS and "[t]he district court previously considered the issue of mootness twice and found that the case was not moot both times." Reply at 12–13. According to Appellants, because NMDWS did not appeal those rulings, the record is closed.[6]

Although Appellants are correct that the "heavy burden" of establishing mootness rests with NMDWS, *see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,

---

[5] In addition to conceding that all four Appellants have been permitted to apply for PUA benefits, Appellants do not assert on appeal that they have been denied the opportunity to apply for benefits retroactive to the earliest date on which they were eligible. This is bolstered by the fact that, although the district court initially concluded that the issue of retroactive benefits constituted a live controversy, this does not appear to have formed the basis of the district court's subsequent mootness decision in its order denying Appellants' Motion to Alter Judgment.

[6] At oral argument, Appellants also asserted that this case is not moot because none of the four Appellants have received certain supplemental benefits, other than PUA benefits. Entitlement to these other benefits, however, was not argued in Appellants' opening brief and is, therefore, not relevant to this appeal. As a result, this argument does not impact our mootness analysis.

528 U.S. 167, 180 (2000), they are incorrect to argue that we should not consider mootness because of the district court's previous rulings and NMDWS's failure to appeal those rulings. Even if Appellants' claims were not moot earlier in this case, if it subsequently becomes clear that Appellants' claims lack one or more elements of an Article III case or controversy, the claims become moot and we lack jurisdiction. *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997))).

We evaluate mootness as to each form of relief requested. *Prison Legal News*, 944 F.3d at 880. Appellants request the following relief with respect to their due process claim: (1) an injunction preventing NMDWS from continuing to deny Appellants access to the PUA program and requiring NMDWS to allow Appellants to apply for benefits retroactively; (2) a declaration that NMDWS's actions relative to the CARES Act programs violated Appellants' rights under the Fourteenth Amendment's Due Process Clause; and (3) attorney's fees and costs.

## 1.    Redressability

"The key question for mootness is whether granting a present determination of the issues offered will have some effect in the real world." *Audubon of Kansas, Inc.*, 67 F.4th at 1102 (internal quotation marks omitted). Considering each form of requested relief in turn, we conclude that none of the relief sought would redress the injury alleged on appeal. Thus, this appeal is moot.

11

### a.    *Injunctive relief*

Appellants request an injunction preventing NMDWS from continuing to deny them access to the PUA benefits program and requiring NMDWS to allow them to apply for benefits retroactively. A claim for injunctive relief "becomes moot when the plaintiff's continued susceptibility to injury is no longer reasonably certain or is based on speculation and conjecture." *Id.* (internal quotation marks omitted). On appeal, NMDWS asserts and Appellants concede that each Appellant has now had the opportunity to apply for PUA benefits. Additionally, the relevant benefits program has expired. Thus, injunctive relief preventing NMDWS from continuing to block Appellants from applying for PUA benefits and requiring that NMDWS allow Appellants to apply for PUA benefits retroactively would be meaningless. *See Prison Legal News*, 944 F.3d at 882 ("Because the event to be enjoined has come and gone, . . . there is now no reason for the court to order [the requested relief]." (internal quotation marks omitted)).

### b.    *Declaratory relief*

Appellants also request a declaration that NMDWS's actions relative to the CARES Act programs violated Appellants' rights under the Due Process Clause. "[A] claim for declaratory relief becomes moot when the relief would not affect the behavior of the defendant toward the plaintiff," *Audubon of Kansas, Inc.*, 67 F.4th at 1102 (internal quotation marks omitted), because such a request "fails to seek[] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant" and would amount to an impermissible advisory opinion, *Prison Legal News*, 944 F.3d at 880 (internal quotation marks omitted) (alterations in original).

The PUA benefits program has expired, and New Mexico is no longer providing these benefits pursuant to the CARES Act and the Agreement. NMDWS therefore cannot prospectively offer Appellants the opportunity to apply for future PUA benefits because the program is no longer active. Appellants also concede on appeal that each Appellant has been given the opportunity to apply for the PUA benefits that were made available while the program was active. Thus, a declaration that NMDWS violated Appellants' rights under the Due Process Clause when NMDWS prevented Appellants in the past from applying for benefits would have no effect in the real world, as it would not alter NMDWS's behavior or provide any actual relief to Appellants.

c.    *Attorney's fees and costs*

Finally, Appellants request attorney's fees and costs in their complaint. "As a general rule, we have said that a claim of entitlement to attorney's fees does not preserve a moot *cause of action* although the expiration of the underlying cause of action does not [necessarily] moot a controversy over attorney's fees already incurred." *Fleming v. Gutierrez*, 785 F.3d 442, 448 (10th Cir. 2015) (internal quotation marks omitted) (alteration in original). "This language means only that a plaintiff may still recover (and a defendant may still contest) fees even when the merits have been rendered moot." *Citizens for Responsible Gov't*, 236 F.3d at 1183. It "does not mean that an otherwise moot issue is revived whenever a prevailing party requests or might request fees." *Id.*

Although Appellants' request for attorney's fees and costs may not be moot, "where no fee request has yet been filed, we lack a final decision from the district court as to whether [Appellants] are entitled to fees, so the question is not before this court."

13

*Fleming*, 785 F.3d at 448 (internal quotation marks omitted); *see also Citizens for Responsible Gov't*, 236 F.3d at 1183 ("Without a final decision from the district court as to whether Plaintiffs are entitled to fees, the question is not before this court."). Thus, Appellants' request for relief in the form of attorney's fees does not alter our mootness analysis.

### 2.    Voluntary Cessation

Finally, the doctrine of voluntary cessation does not overcome mootness in this case because "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow*, 601 F.3d at 1115 (quoting *Davis,* 440 U.S. at 631).

At oral argument, NMDWS asserted that the doctrine does not apply to this appeal because all Appellants were offered the opportunity to apply for PUA benefits, Appellants have availed themselves of that opportunity, and the program has since ended, so there is no opportunity for NMDWS to reverse its decision. NMDWS also disavowed any attempt to "claw back" the PUA benefits, explaining that it had determined the three Appellants who received benefits were eligible for those benefits. Appellants, in contrast, contend there remains a danger that NMDWS will reverse its decision to grant benefits to three of the four Appellants and will seek reimbursement from them of any PUA payments already made. Appellants further argue that NMDWS's statements that they will not claw back PUA benefits are not entitled to belief. We are not persuaded.

Recall that NMDWS's conduct preventing Appellants from applying for PUA benefits gave rise to the alleged violation in this case. For three reasons, we conclude NMDWS has met its burden on mootness. First, there is no reasonable expectation that its conduct preventing Appellants from applying for PUA benefits will recur because the program expired in September 2021. Second, interim relief has completely and irrevocably eradicated the effects of this alleged violation because NMDWS provided Appellants with the opportunity to apply for PUA benefits. Appellants' argument that NMDWS might later conclude they were not eligible for the benefits they received does not address the fact that Appellants were given the relief they sought: the opportunity to apply. Finally, NMDWS represented to the court during oral argument that it does not intend to seek reimbursement of the benefits distributed to Appellants. Thus, because Appellants have been given the opportunity to apply for PUA benefits and the program has ended, the doctrine of voluntary cessation does not overcome mootness in this case.

### III.     CONCLUSION

This case is moot because it is impossible for us to grant effective relief that will redress the injuries alleged on appeal. Therefore, we DISMISS this appeal.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

15